IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SONNY D. BALVIN, | ) | 8:12CV377 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| FRED BRITTEN, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Sonny D. Balvin's ("Balvin") Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) Respondent filed an Answer (filing no. 12), Brief on the merits of the Petition (filing no. 13), Reply Brief (filing no. 20), and relevant State Court Records (filing no. 11). Balvin has filed a Brief in response to Respondent's Answer and Brief. (Filing No. 17.) This matter is therefore deemed fully submitted.

Liberally construed, Petitioner asserts he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his trial counsel advised him to abandon his alibi defense and enter a plea of no contest. (Filing No. 1 at CM/ECF pp. 5-6.)

## BACKGROUND

The Nebraska Court of Appeals provided the following background in denying Petitioner's state motion for post conviction relief:[1]

---

[1]The court sees nothing in Plaintiff's brief to suggest that he disputes the factual summary of the Nebraska Court of Appeals. *See, e.g., Weston v. Dormire,* 272 F.3d 1109, 1110-11 (8th Cir. 2001) (recounting facts adduced at trial, as found by the Missouri appellate court).

On September 25, 2009, the State filed an information in the district court, charging Balvin with one count of first degree sexual assault, a Class II felony. On November 30, 2009, Balvin pled no contest to attempted second degree sexual assault, a Class IIIA felony, in exchange for the State's agreement to reduce the charge of the original information, dismiss another pending case, and not to file several other charges. The State filed an amended information in connection with the plea agreement.

At the plea hearing, Balvin was arraigned on the amended information, and he stated that he understood the charge and the possible penalty that could include a civil commitment following release and lifetime community supervision.

The district court informed Balvin of his various rights, and Balvin stated that he understood that he was giving up his presumption of innocence, his right to a trial, his right to confront his accusers, his right to present witnesses in his own defense, his right to remain silent, his right to question the legality of any search and seizure of evidence or to question the legality of any statements, admissions, or confessions he might have made in connection with the case by pleading no contest. Balvin also stated that he understood he would be found guilty of a felony offense if the court accepted his plea and that he understood the various disabilities associated with a felony conviction as explained by the court.

The district court advised Balvin that he was entitled to have a jury determine whether he would be subject to lifetime supervision, and Balvin stated that he understood his right and he was freely and voluntarily waiving his right to a jury determination of the issue and leaving the issue for the court to decide. Balvin informed the court that he understood the court's explanation of his rights and did not have any questions about those rights, and that he was waiving those rights and giving them up freely and voluntarily. Balvin again indicated his understanding of the possible penalties if convicted of the amended charge, including that he could be subject to the registration

2

requirements of the Nebraska Sex Offender Registration Act (the SORA) and the possibility that his sentence could run consecutively to the sentence he was already serving in another case. Balvin again informed the court that he understood what he was charged with in the amended information and that he did not have any questions about the charge itself.

The prosecutor provided a detailed and extensive factual basis encompassing approximately 6 pages of the bill of exceptions from the plea hearing. The factual basis showed that Balvin left a bar in Lincoln, Nebraska, with the female victim after Balvin had purchased drinks for her. Balvin accompanied the victim with the explanation that he would walk her to her vehicle. While walking through a residential area, Balvin took the victim into a detached garage, choked her, and subjected her to penile-vaginal and penile-anal penetration. The offense occurred sometime after midnight on October 6, 2007. Neither Balvin nor his attorney had any comments to make on the factual basis provided by the State.

Balvin informed the district court that he had discussed the plea proceedings with his attorney and that his attorney had explained the charge in the amended information together with the rights that the court had been discussing with Balvin. The court then asked Balvin:

THE COURT: Did [your attorney] discuss with you all of the possible defenses to this charge that you might have if you were to have a trial?

[BALVIN] : Yes .

THE COURT: Are there any defenses that you feel you may have or any facts about the case you feel might be helpful to your defense that you have not discussed with [your attorney]?

[BALVIN]: No.

3

THE COURT: In other words, have you told him everything about the case that you feel he needs to know to be able to represent you properly?

[BALVIN]: Yes.

THE COURT: Are you satisfied with the job he has done as your attorney?

[BALVIN]: Yes.

THE COURT: Do you feel he is a competent lawyer, that he knows what he's doing?

[BALVIN]: Yes.

THE COURT: Is there anything you have asked him to do in regard to representing you in this matter that he has failed to do?

[BALVIN]: No.

Balvin also informed the court that he had had enough time to discuss the case with his attorney.

Balvin and his attorney both informed the district court that the prosecutor's recitation of the details of the plea agreement corresponded to their own understanding of the agreement. Balvin agreed that the plea agreement was "an agreeable way to dispose of these matters" as far as he was concerned. Balvin informed the court that no one had made any threats, direct or indirect, used any force, or held out promises of any kind to get him to plead to the charge of the amended information. He also informed the court that he understood that the determination of the sentence, within the statutory limits, was entirely up to the court, that he still wished to plead no contest to the amended information, and that he was freely and voluntarily entering the plea and waiving his rights.

4

Balvin had nothing else he wished to say or any questions for the court or his attorney. After determining that Balvin's attorney believed that Balvin fully understood his rights and the consequences of waiving those rights, the district court accepted Balvin's plea and found Balvin guilty of the offense charged in the amended information.

On January 14, 2010, the district court sentenced Balvin to a term of imprisonment of 4 to 5 years, consecutive to any other sentence then being served by Balvin. For purposes of lifetime community supervision, the State offered exhibit 1, a compact disc containing several of the police reports found in the presentence investigation report, and exhibit 2, Balvin's prior certified conviction for first degree sexual assault in another case. Balvin's attorney objected to exhibit 2 based on his position that the court could not use that exhibit to find that the current offense was an aggravated offense for purposes of community supervision. The court overruled Balvin's objection and received both exhibits.

In sentencing Balvin, the district court observed that this was Balvin's fourth felony conviction and noted the seriousness and the use of force involved in the present offense. The court noted that Balvin was "very fortunate" that his attorney had obtained an agreement, allowing Balvin to plead to a Class IIIA felony. In addition to sentencing Balvin to imprisonment for 4 to 5 years, the court ordered Balvin to submit to a human immune deficiency virus antibody or antigen test to be conducted under the jurisdiction of the Department of Correctional Services and that the results be made available to the victim, the court, and the Department of Health and Human Services. The court determined that Balvin's crime was an aggravated offense "both because of [his] previous conviction and because . . . the underlying facts of the case here make this an aggravated offense." As a result, Balvin was required to register under the SORA for the remainder of his life and was also subject to lifetime community supervision. The court made the findings as to the aggravated circumstances beyond a reasonable doubt. This court summarily affirmed Balvin's conviction and sentence on direct appeal, and the Nebraska Supreme Court denied Balvin's petition for

further review. See *State v. Balvin*, 18 Neb. App. iii (case No. A-10-124, July 27, 2010).

On April 18, 2011, Balvin filed a pro se motion for postconviction relief, alleging that he had received ineffective assistance of counsel in various ways. In its response to Balvin's motion, the State asked the district court to deny an evidentiary hearing. The court entered an order on September 21 granting the State's motion to deny an evidentiary hearing, and it dismissed Balvin's postconviction motion without further hearing. Balvin subsequently perfected the present appeal to this court.

(Filing No. 11-2 at CM/ECF pp. 18-24.)

Among the claims in Balvin's state postconviction motion was Balvin's assertion that his trial counsel was ineffective because he persuaded "Balvin to abandon his viable alibi defense and, instead, enter a plea of no contest to the charge of attempted second degree sexual assault." (*Id*. at CM/ECF p. 66.) On May 7, 2012, the Nebraska Court of Appeals explored Balvin's claim, concluded Balvin had not established prejudice sufficient for his ineffective assistance of counsel claim, and affirmed the Nebraska District Court's denial of his postconviction motion. (*Id*.)

## ANALYSIS

Liberally construed, Balvin presented the claim he now asserts in his Petition to the Nebraska state courts, that is, he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his trial counsel advised him to abandon his alibi defense and enter a plea of no contest. (*See* Filing No. 11-2 at CM/ECF pp. 66; Filing No. 1 at CM/ECF pp. 5-6.) The Nebraska Court of Appeals adjudicated this claim on the merits and dismissed it. (*See* Filing No. 11-2 at CM/ECF pp. 28-29.)

### A.    *Standard Under 28 U.S.C. § 2254(d)*

6

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

Put simply, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due to state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* This high degree of deference only applies where a claim has

7

been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit has clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (quotations and citations omitted). The court also determined that a federal district court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* Similarly, the Supreme Court has held:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S. Ct. at 784.

8

**B.    The Strickland Standard**

Claims of ineffective assistance of counsel are reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *Strickland* requires that a petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the *Strickland* test requires the petitioner to demonstrate that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988)). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action. 466 U.S. at 689.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law;

also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and that "leeway" presents a "substantially higher threshold" for a federal habeas petitioner to overcome. Thus:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, supra, at 473, 127 S. Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Id.* at 123.

### C.   *Balvin's Claim*

#### 1.   State Court Findings

In the state's last reasoned decision, the Nebraska Court of Appeals considered whether Balvin's no contest plea was the result of ineffective assistance of counsel. (Filing No. 11-2 at CM/ECF p. 26.) In doing so, the Nebraska Court of Appeals specifically stated:

> In a postconviction proceeding brought by a defendant convicted on a plea of guilty or no contest, a court will consider an allegation that the

10

plea was the result of ineffective assistance of counsel. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case. *State v. Dunkin*, supra. The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *Id*. A lawyer's performance is deficient if his or her performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Lee*, supra. Within the plea context, in order to satisfy the prejudice requirement to establish an ineffective assistance of counsel claim, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *State v. Dunkin*, supra.

. . . Balvin argues that his trial counsel was ineffective in advising him to enter a plea when counsel did not adequately investigate Balvin's alibi defense. The record shows that Balvin's counsel filed a notice of alibi defense on September 25, 2009, two months prior to the plea hearing. At the plea hearing, Balvin affirmed that he had discussed all defenses and facts with counsel, that he had told his counsel everything about the case so he could receive proper representation, that he was satisfied with the job being done, that he believed his counsel was competent, and that there was nothing Balvin had asked counsel to do that he had failed to do. Balvin also stated his understanding that he was giving up the presumption of innocence and his right to present witnesses in his own defense by pleading no contest to the charge. The record from the plea hearing directly refutes Balvin's claim on postconviction review.

(*Id*. at CM/ECF pp. 26-27.)


      2.    Deference

As set forth above, this court must give Nebraska state court decisions substantial deference. After carefully reviewing the record in this matter, the court finds that the Nebraska Court of Appeals' decision to deny Balvin's ineffective assistance of counsel claim was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Indeed, Balvin concedes that his plea was voluntary and intelligent and the record shows that Balvin and his counsel were aware of his alibi defense prior to Balvin's plea. (Filing No. 11-2 at CM/ECF pp. 27-28; Filing No. 17 at CM/ECF p. 10.) Moreover, Balvin has not submitted clear and convincing evidence to establish that the Nebraska Court of Appeals was incorrect in any of its factual or legal determinations. 28 U.S.C. § 2254(e)(1). Because the Nebraska state courts reasonably applied *Strickland* and other Supreme Court holdings in reaching their decisions, Balvin is not entitled to a writ of habeas corpus.

## CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Balvin has failed to make a substantial showing of the denial of a constitutional right. The court is not persuaded that the issues raised in the Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THEREFORE ORDERED that:


1.     Petitioner Sonny D. Balvin's Petition for Writ of Habeas Corpus (filing no. 1) is dismissed with prejudice.


2.     A separate judgment will be entered in accordance with this Memorandum and Order.


DATED this 16th day of September, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

13